

SO ORDERED,

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: February 20, 2015**

**The Order of the Court is set forth below. The docket reflects the date entered.**

---

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

**WILLIE R. RICE, SR. AND**                                   **CASE NO. 13-12722-NPO**
**KANSERA J. RICE,**

**DEBTORS.**                                                  **CHAPTER 13**

**CALVIN JEROME THOMAS**                                      **PLAINTIFF**

**VS.**                                                       **ADV. PROC. NO. 14-01004-NPO**

**KANSERA J. RICE**                                           **DEFENDANT**

### MEMORANDUM OPINION AND ORDER
### ON COMPLAINT (ADVERSARY PROCEEDING)

This matter came before the Court for trial on December 18, 2014 (the "Trial") on the

Complaint (Adversary Proceeding) (the "Complaint") (Adv. Dkt. 1)[1] filed by Calvin Jerome

Thomas ("Thomas") and the Answer (Adversary Proceeding) (the "Answer") (Adv. Dkt. 4) filed

by Kansera J. Rice ("K. Rice") in the Adversary.  K. Rice also filed the Defendant's Motion in

Limine (the "Motion *in Limine* to Exclude Parol Evidence") (Adv. Dkt. 15) and the Defendant's

Motion in Limine (the "Motion *in Limine* to Exclude Settlement Evidence" or, together with the

---

[1] Citations to the record are as follows: (1) citations to docket entries in the above-styled adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. ____)"; and (2) citations to docket entries in the above-styled bankruptcy case (the "Bankruptcy Case"), are cited as "(Bankr. Dkt. ____)".

Motion *in Limine* to Exclude Parol Evidence, the "Motions *in Limine*") (Adv. Dkt. 16). At Trial, the Court reserved its ruling on the Motion *in Limine* to Exclude Parol Evidence and denied the Motion *in Limine* to Exclude Settlement Evidence but in this Opinion addresses both Motions *in Limine* for the sake of completeness and clarity.

The Pretrial Order (the "Pretrial Order") (Adv. Dkt. 20) was entered on December 11, 2014. At Trial, Chaka Smith represented Thomas, and S. David Norquist represented K. Rice. During Trial, Thomas introduced into evidence five (5) exhibits, and K. Rice introduced into evidence two (2) exhibits.[2] Exhibit P-1 was admitted over the objection of K. Rice.  The parties each offered their own testimony; there were no other witnesses. Thomas asks the Court to declare non-dischargeable a debt arising out of K. Rice's failure to disclose a lien on a mobile home he agreed to purchase from her.  Thomas contends the debt is non-dischargeable under either or both 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6).[3]  The Court, having considered the pleadings, evidence, and arguments of counsel, finds as follows:[4]

---

[2] The exhibits introduced into evidence at Trial by Thomas are cited as "(Ex. P-___)", and exhibits introduced into evidence by K. Rice are cited as "(Ex. D-___)".

[3] From this point forward, all code sections refer to the U.S. Bankruptcy Code found at title 11 of the U.S. Code unless otherwise noted.

[4] Pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable to the Adversary by Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following constitutes the findings of fact and conclusions of law of the Court without regard to which section of the Opinion they are found.

## Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).[5] Notice of the Trial was proper under the circumstances.

## Facts

1.      In November 1995, K. Rice purchased a 1996 16' x 76' mobile home (the "Mobile Home") for $33,907.96 (POC 5-1) and obtained a loan of $27,130.37 from Green Tree Financial Servicing Corporation ("Green Tree") in connection with the purchase. The loan was payable in 240 monthly installments of $270.86 beginning on December 10, 1995. K. Rice signed a Manufactured Home Retail Installment Contract and Security Agreement (the "Retail Contract") (POC 5-1) granting Green Tree a lien on the Mobile Home.

2.      In January 2007, K. Rice verbally agreed to lease the Mobile Home to Thomas for $480.00 per month beginning on April 1, 2007 with the right to purchase the Mobile Home after 60 payments for a total purchase price of $28,800.00. Although the precise date is unknown from

---

[5] Neither party has raised the issue of whether this Court has constitutional authority to enter a final judgment in light of the U.S. Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). It is generally agreed that determining the scope of a debtor's discharge under § 523 is a core proceeding and a fundamental part of the bankruptcy process. *Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011) (a bankruptcy court "as an Article I tribunal, has the constitutional authority to hear and finally determine whether claims are non-dischargeable in a bankruptcy case."). The Court finds that the liquidation of Thomas's claim is part of the adjudication of non-dischargeability and does not change this analysis. *Id.*; *Morrison v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 478-80 (5th Cir. 2009); *Deitz v. Ford (In re Deitz)*, 469 B.R. 11 (B.A.P. 9th Cir. 2012); *Countrywide Home Loans, Inc. v. Cowin (In re Cowin)* 492 B.R. 858 (Bankr. S.D. Tex. 2013); *Dragisic v. Boricich (In re Boricich)*, No. 081815248, 2011 WL 5579062, at *1 (Bankr. N.D. Ill. Nov. 15, 2011). However, to the extent it later may be determined that this Court does not have the authority to enter a final judgment in this Adversary, this Opinion may be considered proposed findings of fact and conclusions of law and/or a report and recommendation.

the record, Thomas and his family moved into the Mobile Home at some point after April 1, 2007 under the oral lease purchase agreement.

3.      K. Rice testified at Trial that she agreed only to rent the Mobile Home to Thomas in January 2007, not to sell it to him.  According to K. Rice, she did not agree to sell the Mobile Home to Thomas until much later in November 2007.  The Court finds, however, that the evidence at Trial established that K. Rice agreed in January 2007 to sell Thomas the Mobile Home for a purchase price of $28,800.00.  It is undisputed that K. Rice wrote on the receipts for all of the initial four payments, "Lease to *Buy* Mobile Home." (Ex. P-1) (emphasis added).  The first regular monthly payment of $480.00 was made by Thomas in April 2007, and the next three regular monthly payments were made in May, June, and July 2007.[6]  (Ex. P-1).  Moreover, as part of their agreement, Thomas was required to make a $1,500.00 "down payment," a term generally defined as "[t]he portion of a purchase price paid in cash . . . at the time the *sale* agreement is executed." BLACK'S LAW DICTIONARY 1310 (10th ed. 2014) (emphasis added).  K. Rice could not explain why she required Thomas to make a down payment if she had not agreed to sell the Mobile Home to him at that time.  Thomas paid the down payment in three installments, the last one on March 8, 2007 (Ex. P-1, at 1).  The three receipts signed by K. Rice acknowledging the down payment contained language consistent with her intent to sell the Mobile Home to Thomas at the end of the lease term:  "Toward Lease *to Buy* Mobile Home," "partial down payment toward Mobile Home Lease *to Buy*," and "Balance on Down payment toward Mobile Home Lease *to Buy*."  (*Id.*) (emphasis added).  K. Rice testified that she did not know the difference between "rent" and "lease to buy," but the Court does not find her testimony in this regard to be credible.

---

[6] Thomas made the fourth payment on July 12, 2007 in the amount of $500.00, rather than $480.00, because of a $20.00 late charge imposed by K. Rice. (Ex. P-1, at 1).

4.      Thomas testified that before entering into the oral agreement, K. Rice told him—in direct response to his question—that the Mobile Home was *not* encumbered by any lien.[7] Thomas further testified that he would not have entered into the lease purchase agreement had he known that the Mobile Home was in fact encumbered by a lien held by Green Tree.[8]

5.      K. Rice had promised Thomas a lease purchase document but she did not provide him one for several months.  Thomas testified that he finally told K. Rice either to return the money to him and take back the Mobile Home or reduce their agreement to a written document. Thomas did not make his regular monthly payments in August, September, and October 2007 upon the advice of an attorney who he retained to contact K. Rice about entering into a written lease purchase agreement.  After being contacted by Thomas's then-attorney, K. Rice hired her own lawyer to draft an agreement.[9]

6.      The parties signed the Installment Sales Contract (the "Sales Contract") (Ex. P-2) on October 29, 2007.  The Sales Contract required Thomas to make "lease-purchase" payments of $480.00 per month by the 5th day of each month for 60 months beginning on November 1, 2007 and ending October 1, 2012.  The sum total of these payments is $28,800.00[10] but there is no express mention of any purchase price in the Sales Contract.  For any payment not made by

---

[7] Test. of Thomas at 1:28:40.  The Trial was not transcribed.  The references to testimony are cited by the time stamp of the audio recording.

[8] K. Rice's testimony was consistent to the extent she agreed with Thomas that she did not tell him about Green Tree's lien.  She maintained, however, that Thomas did not ask her if there was a lien on the Mobile Home and that Thomas must have known about the lien from her husband.  The Court sustained an objection to her testimony about what her husband may have told Thomas on the ground of hearsay.

[9] The attorney who drafted the agreement for K. Rice is not the same attorney representing her in the Adversary.

[10] $28,800.00 = 60 months × $480.00.

the 5th day of the month, Thomas incurred a late charge of $30.00. (Ex. P-2, at ¶ 4). The Sales Contract indicated that Thomas had already paid a down payment of $1,500.00 "to be applied to the purchase price." (Ex. P-2, at ¶ 5). As K. Rice pointed out at Trial, however, the Sales Contract did not expressly provide that the down payment would be subtracted from the purchase price. Also, the Sales Contract did not mention the four monthly payments totaling $1,940.00[11] made by Thomas from April 2007 through July 2007 although the receipts for these payments were marked by K. Rice as payments "to buy Mobile Home."

7.     The Sales Contract obligated K. Rice to "execute a Bill of Sale to [Thomas] upon receipt of the final payment due on or about October 1, 2012." (Ex. P-2, at ¶ 14). If Thomas vacated the Mobile Home prior to making the final October 1, 2012 payment, he forfeited all payments made toward the purchase of the Mobile Home to K. Rice. (*Id*., at ¶ 12).

8.     The Sales Contract did not disclose the Retail Contract between K. Rice and Green Tree or mention Green Tree's lien on the Mobile Home, although K. Rice agreed "not to use the [M]obile [H]ome . . . as collateral for any *additional* indebtedness which [K. Rice] may hereafter incur prior to [K Rice's] conveyance of a free and clear Certificate of Title to said [M]obile [H]ome to [Thomas] on or about October 1, 2012." (Ex. P-2, at ¶17) (emphasis added). K. Rice argued at Trial that the word "additional" was an implied reference to the Retail Contract.

9.     The Sales Contract contained an "anti-reliance" clause under the heading "Binding Effect," as follows: "Neither party has relied upon any statement or representation not embodied in this contract allegedly made by the other party or any representative of either party." (Ex. P-2, at ¶ 18).

---

[11] $1,940.00 = $480.00 × 3 (April-June) + $500.00 (July).

10.    Thomas paid K. Rice $480.00 in November and December 2007 and $510.00 for the next 47 months from January 2008 through November 2011.  The higher payments of $510.00 each included a $30.00 late fee.  Although Thomas's payments from January 2008 forward were late, they were always made before the end of the same month they were due and always included the $30.00 late fee.

11.    According to Thomas, K. Rice was unhappy with the Sales Contract because it did not include any "interest"[12] and for that reason asked him to "tear it up." Thomas refused.  K. Rice then brought two (2) eviction proceedings against Thomas in justice court because of his failure to pay her in a timely manner.  Both times, the justice court ruled in favor of Thomas on the ground he paid the monthly amounts along with the additional late fees provided for in the Sales Contract before the end of each month. Thomas viewed these justice court proceedings as K. Rice's attempt to avoid her obligation under the Sales Contract to sell him the Mobile Home.

12.    K. Rice defaulted on her obligations to Green Tree under the Retail Contract, and Green Tree obtained a Final Judgment in Replevin (the "2008 Replevin Judgment") (Ex. P-3) against her on May 23, 2008 from the County Court for the Second Judicial District of Bolivar County, Mississippi in Cause No. C2008-105. The 2008 Replevin Judgment required K. Rice to vacate the Mobile Home but suspended that provision upon her payment of the delinquency. K. Rice paid the delinquency.  K. Rice's default and Green Tree's collection actions against her were unknown to Thomas who remained in possession of the Mobile Home during this time.

13.    On December 29, 2011 Thomas sent K. Rice $430.00, the amount he believed to be the final payment due under the Sales Contract (Ex. P-5; Ex. D-2), and requested a bill of sale and title to the Mobile Home. Thomas calculated the final payment by subtracting from

---

[12] Neither Thomas nor Rice explained what "interest" was supposedly missing from the Sales Contract.

$28,800.00 (the purchase price for the Mobile Home), the down payment of $1,500.00 and installment payments of $26,870.00,[13] including all late charges.   ($430.00 = $28,800.00 - $1,500.00 - $26,870.00).  K. Rice accepted the $430.00 but did not deliver title to the Mobile Home to Thomas.  Instead, K. Rice waited several months and then retained counsel.  In July 2012, more than six (6) months after Thomas asked for the bill of sale, K. Rice and her counsel met with Thomas and his counsel.

14.    Thomas was permitted to testify about the July 2012 meeting over the objection of K. Rice who claimed that their discussions involved settlement negotiations barred from admission by Rule 408 of the Federal Rules of Evidence ("Rule 408").[14]  For reasons set forth in the discussion section of the Opinion, the Court finds the testimony admissible for the purpose of showing K. Rice's alleged fraudulent intent.  The Court finds that the parties initially agreed at the July 2012 meeting that Thomas owed $1,410.00 as a final payment under the Sales Contract.[15]  However, K. Rice then disclosed to Thomas for the first time that Green Tree held a lien on the Mobile Home of approximately $10,000.00 (more than the final payment owed by Thomas) and, thus, she was unable to transfer title to the Mobile Home.  K. Rice requested additional time until March 1, 2013 to clear the title to the Mobile Home, assumedly to allow her more time to pay off Green Tree's lien.  As consideration for Thomas's agreement to wait eight (8) months for the title, K. Rice agreed to reduce the final payment from $1,410.00 to $500.00.

---

[13] $26,870.00 = $2,900.00 (2007) + $6,120.00 (2008) + $6,120.00 (2009) + $6,120.00 (2010) + $5,610.00 (2011).

[14] The Federal Rules of Evidence are applicable to adversary proceedings under Rule 9017 of the Federal Rules of Bankruptcy Procedure.

[15] $1,410.00 = $28,800.00 - $1,500.00 - $25,890.00.  The additional payment is owed if almost all of the late charges are eliminated from the equation:  $25,890.00 = $2,900.00 (2007) + $5,760.00 (2008) + $5,760.00 (2009) + $5,760.00 (2010) + $5,710.00 (2011).   In their calculation, the parties included the $20.00 late fee paid by Thomas in July 2007.

For reasons unknown to the Court, the parties did not reduce their agreement to writing.  Thomas

paid $500.00 to his attorney in October 2012, but the payment was never tendered to K. Rice

because she failed to satisfy Green Tree's lien and never delivered title to the Mobile Home to

Thomas's counsel.

15.     On February 8, 2013, K. Rice filed a complaint in the Chancery Court of Bolivar

County, Mississippi (the "Chancery Court") in Cause No. 2013-0025 (the "Chancery Lawsuit")

against Thomas alleging that he materially breached the Sales Contract by failing to complete all

his monthly payments prior to the expiration of the term of the lease in October 2012. K. Rice

requested immediate repossession of the Mobile Home. In response, Thomas filed an answer

denying K. Rice's allegations and asserted a counterclaim alleging that he met all of his

obligations under the Sales Contract.  Thomas asked the Chancery Court to award him title to the

Mobile Home.

16.     On July 3, 2013, K. Rice and her spouse, Willie R. Rice, Sr. (together with K.

Rice, the "Debtors") jointly filed a voluntary petition for relief pursuant to chapter 13 of the

United States Bankruptcy Code (the "Petition"). (Bankr. Dkt. 1).  The filing of the Petition

resulted in an automatic stay of the Chancery Lawsuit under § 362.  Also, K. Rice stopped

making any payments to Green Tree under the Retail Contract after the commencement of the

Bankruptcy Case.

17.     Because K. Rice took the position that the Sales Contract had terminated in

October 2012 before commencement of the Bankruptcy Case, the Debtors did not disclose the

Sales Contract or list Thomas as a creditor in their bankruptcy schedules.  In Schedule D-

Creditors Holding Secured Claims, they identified Green Tree as a secured creditor holding a

lien of $10,000.00 on the Mobile Home (Bankr. Dkt. 7 at 26) and in Schedule B-Personal

Property, listed the Mobile Home as having been "surrendered." (Bankr. Dkt. 7 at 22). In their amended chapter 13 plan, the Debtors proposed to treat the Mobile Home as abandoned collateral. (Bankr. Dkt. 49).

18.     On July 30, 2013, Green Tree filed a proof of claim (POC 5-1) asserting a claim of $8,920.40 for "Money Loaned" secured by the Mobile Home. On August 7, 2013, Green Tree filed the Motion to Abandon Collateral and Lift Stay (the "Green Tree Stay Motion") (Bankr. Dkt. 16). At some point, Green Tree became informed that Thomas and his family were living in the Mobile Home and notified Thomas of the Green Tree Stay Motion. Until then, Thomas was unaware of the Debtors' Bankruptcy Case. On August 21, 2013, Thomas filed the Calvin Thomas' Response in Opposition to Motion to Abandon Collateral and Lift Stay (Bankr. Dkt. 21) in which Thomas objected to the Debtors' abandonment to Green Tree on the ground that he held a possessory and contractual interest in the Mobile Home.

19.     On October 31, 2013, Thomas filed the Motion to Lift Automatic Stay (the "Thomas Stay Motion") (Bankr. Dkt. 72) asking the Court to allow him to litigate the counterclaim against K. Rice in the Chancery Lawsuit.

20.     On November 3, 2013, Thomas filed the Creditor Calvin Thomas Objection to Confirmation of Chapter 13 Plan (the "Objection") (Bankr. Dkt. 80) objecting to the proposed abandonment of the Mobile Home to Green Tree and the failure of the Debtors to schedule any payments to him.

21.     On November 18, 2013, the Debtors filed the Response to Motion to Lift Stay (Bankr. Dkt. 88) opposing Thomas's prosecution of the Chancery Lawsuit.

22.     On November 22, 2013, the Court entered the Order Abandoning Collateral and Lifting Stay (DKT #16) (Bankr. Dkt. 90).  As a result, Green Tree was granted relief from the stay on the Mobile Home.

23.     At a hearing on December 5, 2013, Thomas announced to the Court his intention to withdraw the Thomas Stay Motion and the Objection and instead proceed with an adversary proceeding against K. Rice. The Court then entered the Order Withdrawing Objection to Confirmation (Bankr. Dkt. 99) and the Order Withdrawing Motion to Lift Automatic Stay (Bankr. Dkt. 100).

24.     The Order Confirming the Debtor's Plan, Awarding a Fee to the Debtor's Attorney and Related Orders (Bankr. Dkt. 111) was entered on September 16, 2014.

25.     On January 5, 2014, Thomas initiated the Adversary by filing the Complaint. In the Complaint, Thomas contends that K. Rice induced him into entering into the Sales Contract "by false pretenses, a false representation, or actual fraud"  (Compl. ¶ 20) and also that the debt was the result of a "willful and malicious injury" (*Id.* ¶ 21).  Thomas asserts that K. Rice never intended to honor her obligation to transfer title to the Mobile Home.  On February 5, 2014, K. Rice filed the Answer denying any liability.

26.     On August 28, 2014, Green Tree obtained a Final Judgment in Replevin (the "2014 Replevin Judgment") (Ex. P-4) against Thomas from the County Court for the Second Judicial District of Bolivar County, Mississippi in Case No. C-2014-055.  The 2014 Replevin Judgment awarded physical possession of the Mobile Home to Green Tree and ordered Thomas to vacate the premises.  The eviction was stayed upon the lump sum payment of $5,298.28 by Thomas and his payment thereafter of the monthly amounts due under the Retail Contract between Green Tree and K. Rice.  These payments varied in amounts each month; he has paid

Green Tree $338.62 in October 2014; $438.52 in November 2014; and $453.62 in December 2014.  Thomas has tried unsuccessfully to obtain from Green Tree the amount needed to fully satisfy its lien, but Green Tree has refused to disclose that information without K. Rice's involvement on the ground that Thomas is not a party to the Retail Contract.  As it stood at the time of the Hearing, Thomas had been paying Green Tree whatever amount it told him to pay each month.  When the payments from October 2012 through December 2014 are added to the lump sum payment of $5,298.28, Thomas has paid $6,529.04[16] toward the purchase of the Mobile Home since October 2012 and a total of $33,919.04[17] since February 2007.  This total does not include the $2,000.00 in attorney's fees that Thomas was ordered to pay as a result of Green Tree's 2014 Replevin Judgment.

27.    On December 8, 2014, K. Rice filed the Motions *in Limine* in which she contends that the Sales Contract governs the parties' dispute without reference to their verbal agreement in January 2007 or the July 2012 meeting.

### Discussion

Thomas initiated the Adversary prior to any determination of K. Rice's liability.  Thus, before reaching the merits of the dischargeability issues, the Court must first address the liquidation of Thomas's common law fraud claim.  *Morrison*, 555 F.3d at 478-80.  That discussion necessarily begins with the evidentiary issues raised in the Motions *in Limine*.

---

[16] This figure does not include the $500.00 paid by Thomas to his counsel in October 2012 pursuant to K. Rice's agreement to reduce the purchase price.

[17] $33,919.04 = $27,390.00 + $6,529.04. This figure does not include the $30.00 late fee paid each month from January 2008 through November 2011.

A.      **Evidentiary Issues**

At Trial, K. Rice objected to the admissibility of certain testimony and exhibits.  Many of her objections were ruled upon at the Trial, but the Court reserved ruling on the Motion *in Limine* to Exclude Parol Evidence regarding the parties' statements and conduct that predated the written Sales Contract.  Specifically, K. Rice objected to Thomas's testimony regarding their oral agreement in January 2007 and to the introduction into evidence of the receipts for the payments made by Thomas from February 2007 through July 2007 on which she wrote that they were for the purchase of the Mobile Home.  (Ex. P-1).  K. Rice cited the parol evidence rule and Mississippi's Statute of Frauds, MISS. CODE ANN. § 15-3-1(d), in support of her request that the evidence be excluded.

K. Rice also objected to testimony about the parties' meeting in July 2012 on the ground that it would involve disclosure of settlement negotiations precluded from admission by Rule 408.  The Court overruled that objection at Trial but provides an analysis in this Opinion to address more fully the Motion *in Limine* to Exclude Settlement Evidence.

1.      **Motion *in Limine* to Exclude Parol Evidence**

K. Rice asked the Court "to exclude any and all parol evidence and in support thereof states that the rights, privileges, duties and obligations of the parties are controlled by that certain contract which was entered into in October of 2007."  The rule against the admissibility of parol evidence is not merely a rule of evidence but is one of substantive law.  *S. Stone Co. v. Singer*, 665 F.2d 701, 698 (5th Cir. 1982) (citation omitted).  Mississippi courts generally agree that the parol evidence rule bars consideration of negotiations that took place before the execution of a written contract.  However, the rule does not prohibit the use of parol evidence to clarify or explain ambiguous terms. *Lambert v. Miss. Limestone Corp.*, 405 So. 2d 131, 132 (Miss. 1981)

(parol evidence admissible to explain ambiguities existing in lease contract); *Miss. State Highway Comm'n v. Dixie Contractors, Inc.*, 375 So. 2d 1202, 1205-06 (Miss. 1979) (exception to parol evidence rule "permits clarification of contract ambiguities by testimony showing agreed meanings between parties or other common to trade generally"); *Barnett v. Getty Oil Co.*, 266 So. 2d 581, 586 (Miss. 1972) (oral testimony was admitted to show the true intention of the parties because the amount of land contained in a lease was ambiguous).

The Court could not determine from the "four corners" of the Sales Contract the purchase price of the Mobile Home or, specifically, whether the down payment and monthly payments before November 1, 2007 were intended to be credited toward the purchase price. K. Rice argued that the Sales Contract is unambiguous in that the total purchase price can be determined by multiplying 60 months by $480.00, the monthly payment. The Court agrees that parol evidence may not alter a valid, written contract "that is clear, definite, explicit, harmonious in all its provisions, and . . . free from ambiguity." *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 352 (Miss. 1990). The Court finds, however, that the Sales Contract must be read as a whole "so as to give effect to all of its clauses," and K. Rice's interpretation would require the Court to ignore the express provision in the Sales Contract that the down payment is to be applied to the purchase price. *See Estate of Fitzner*, 881 So. 2d 164, 169 (Miss. 2003) (citation omitted). The Court allowed Thomas to testify and introduce into evidence the receipts to clarify the terms of the Sales Contract. "When previous dealings are reduced to writing which is ambiguous, or there is an independent collateral verbal contract, and the writing shows it to be the result of a discussion, the discussion leading up to the writing may be shown by parol." *Valley Mills v. Se. Hatcheries of Miss., Inc.*, 145 So. 2d 698, 703 (Miss. 1962). Thus, the Court finds that the prior

negotiations between K. Rice and Thomas are admissible in determining their intentions in the construction of the Sales Contract.

Moreover, the Mississippi Supreme Court has noted that the parol evidence rule "is subject to many exceptions and is said to be very flexible." *Turner v. Terry*, 799 So. 2d 25, 32 (Miss. 2001) (quoting another source). One of those exceptions applies whenever parol evidence is offered "to show that the making of a written contract was procured by fraudulent representations." *Id.* at 33; *see Bank of Shaw v. Posey*, 573 So. 2d 1355, 1359 n.3 (Miss. 1990); *Franklin v. Lovitt Equip. Co.*, 420 So. 2d 1370, 1372 (Miss. 1982).

K. Rice also argues that her promise to sell the Mobile Home in January 2007, even if made, is unenforceable because there is no written document evidencing her agreement. Mississippi's Statute of Frauds, MISS. CODE ANN. § 15-3-1(d), renders unenforceable any verbal agreement that is not intended to be carried out over a period of time in excess of fifteen (15) months. The Court finds that if Thomas were seeking damages for the breach of K. Rice's agreement to sell the Mobile Home in January 2007 then the Statute of Frauds would apply. But Thomas is seeking to recover damages for fraud, and, therefore, the Statute of Frauds does not preclude his claim. *See Crystal Springs Ins. Agency, Inc. v. Commercial Union Ins. Co.*, 554 So. 2d 884, 886 (Miss. 1989) (adopting rationale of *Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068 (5th Cir. 1984), and holding that Mississippi Statute of Frauds does not bar action for damages based on fraud)).

### 2.    Motion *in Limine* to Exclude Settlement Evidence

K. Rice asked the Court "to exclude any and all evidence of any offer, demand or negotiation associated with any meeting between the parties and their attorneys which took place

in July of [2012][18] as such meeting was an attempt to compromise a doubtful claim and as such is inadmissible pursuant to Rule 408." Rule 408 provides that evidence of the compromise of a claim, or an offer of a compromise of a claim, or conduct or a statement made during compromise negotiations about the claim is inadmissible "either to prove or disprove the validity or amount of a disputed claim." The Advisory Committee's Notes explain that the primary purpose of Rule 408 is the promotion of public policy favoring the compromise and settlement of disputes. The Fifth Circuit Court of Appeals has noted that the question under Rule 408 is "whether the statements or conduct were intended to be part of the negotiations toward compromise." "Litigation does not need to have commenced for Rule 408 to apply, but there must be an actual dispute or a difference of opinion." *MCI Commc'ns Servs., Inc. v. Hagan*, 641 F.3d 112, 117 (5th Cir. 2011) (quotation omitted); *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106 (5th Cir. 1981).

K. Rice's testimony contradicts her position that the July 2012 meeting was a settlement conference. According to her, the Sales Contract was clear and unambiguous as to the final amount due, and there was no genuine dispute that Thomas owed her ten (10) additional payments or $4,800.00.[19] She denies asking for additional time to satisfy the lien or even telling Thomas she was unable to transfer title to the Mobile Home because of the lien. Her goal in

---

[18] According to the Motion *in Limine* to Exclude Settlement Evidence, the meeting took place in July 2013, not July 2012, but 2013 is obviously a scrivener's error. The only meeting between K. Rice and Thomas discussed at Trial took place in July 2012, and the Bankruptcy Case was commenced in early July 2013, making it unlikely that K. Rice would agree to a meeting with Thomas after abandoning the Mobile Home.

[19] $4,800.00 = $480.00 \times 10$ months. K. Rice disputes that she agreed to a final payment of either $1,410.00 or $500.00 at the July 2012 meeting. According to K. Rice, Thomas made two (2) payments in 2007 for the months of November and December and twelve (12) payments in each of the years 2008, 2009, 2010, and 2011, for a total of only fifty (50) monthly payments, which she alleges is at least ten (10) payments short of the total purchase price for the Mobile Home.

attending the July 2012 meeting was solely to convince Thomas to resume making his monthly

payments.   Because a demand for payment is not tantamount to a settlement offer, K. Rice's

testimony casts doubt on whether the July 2012 meeting involved settlement negotiations.   *See*

*Winchester Packaging, Inc. v. Mobil Chem. Co.*, 14 F.3d 316, 319-20 (7th Cir. 1994) ("Dunning

a deadbeat by threatening to sue is not the same thing as making an offer or demand in the

context of a settlement negotiation.").

The Court, nevertheless, finds that the testimony is admissible for a different reason.

Rule 408 is narrow in that it does not require the Court to exclude evidence admissible for

another purpose (other than to show liability or invalidity of the claim or its amount).   *See*

*Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1069-70 (5th Cir. 1986).   Thomas testified at Trial

that K. Rice informed him for the first time at the meeting that Green Tree held a lien on the

Mobile Home of approximately $10,000.00.   Prior to the meeting, K. Rice falsely informed

Thomas that the Mobile Home was unencumbered.   His testimony was relevant to show K.

Rice's intent in support of his common law fraud claim and his dischargeability claims.   His

testimony was not offered to prove the content of an offer to settle the amount due under the

Sales Contract.   In short, K. Rice failed to meet her burden of showing that the evidence was

inadmissible for *any* purpose.

Moreover, the July 2012 meeting explains why Thomas stopped paying K. Rice.

According to K. Rice, the Sales Contract expired by its own terms in October 2012, but

Thomas's testimony established that he made no payment to K. Rice in 2012 (other than the

$500.00 payment to his attorney) because K. Rice told him at the July 2012 meeting that no

further payments were due.   She promised to convey title to the Mobile Home to him by March

2013.   Allowing K. Rice to use Rule 408 to preclude evidence of the July 2012 meeting that

explains the gap in payments in 2012 would be unfair to Thomas. Rule 408(b) provides that evidence may be admitted if offered for another reason, such as "negating a contention of undue delay." FED. R. EVID. 408.

In sum, the Court finds that K. Rice's interpretation of Rule 408 is too expansive. Rule 408 does not prohibit admission of Thomas's testimony about the July 2012 meeting because: (1) Thomas is not seeking to prove the amount of the payments due under the Sales Contract through K. Rice's settlement offer; (2) the evidence bears directly on K. Rice's fraudulent intent; and (3) Thomas is permitted to rely on the evidence to explain the gap in his payments in 2012.

**B.     Fraud**

Whether K. Rice is liable to Thomas requires an examination of state law. *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007). Thomas has alleged fraud in the inducement in support of both of his claims of liability and non-dischargeability. In Mississippi, fraud in the inducement "arises when a party to a contract makes a fraudulent misrepresentation, *i.e.*, by asserting information he knows to be untrue, for the purpose of inducing the innocent party to enter into a contract." *Lacy v. Morrison*, 906 So. 2d 126, 129 (Miss. Ct. App. 2004). The elements of a claim for common law fraud are:  (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) her intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Great S. Nat'l Bank v. McCullough Envtl. Servs. Inc.*, 595 So. 2d 1282, 1289 (Miss. 1992); *Spragins v. Sunburst Bank*, 605 So. 2d 777, 780 (Miss. 1992); *Saucier v. Coldwell Banker JME Realty*, 644 F. Supp. 2d 769, 785-86 (S.D. Miss. 2007) (applying Mississippi law); *Shell Oil Co. v. Mills Oil Co.*, 717 F.2d 208, 214

(5th Cir. 1983).  These elements must be proved by clear and convincing evidence.  *Spragins*, 605 So. 2d at 780.  A promise of future conduct meets the requirement of a "representation" if it is made with the present intent of not performing it.  *Posey*, 573 So. 2d at 1360.

In this matter, Thomas has proved by clear and convincing evidence the elements of common law fraud.  K. Rice made false representations in January 2007 that she would convey clear title to the Mobile Home upon completion of the installment payments.  Thomas did not assume the lien held by Green Tree and, indeed, had no knowledge of its existence until more than five (5) years after he first agreed to purchase the Mobile Home.  K. Rice knew in January 2007 that she had to satisfy Green Tree's lien in order to convey title to Thomas but in the end abandoned the Mobile Home to Green Tree. Although K. Rice's representation that she would convey clear title to the Mobile Home involves future conduct, K. Rice had no intention of doing so when she induced Thomas into entering into the oral lease purchase agreement.  This false representation was material in that Thomas would not have agreed to purchase the Mobile Home if K. Rice had disclosed the existence of Green Tree's lien.  K. Rice intended that Thomas rely upon her representation with respect to her ability to convey title to the Mobile Home and was motivated by her desire to obtain money from Thomas, including a $1,500.00 down payment. Thomas relied on her representations and was justified in doing so.  *Ill. Cent. R.R. Co. v. Harried*, 681 F. Supp. 2d 772, 777 (S.D. Miss. 2009) (in Mississippi, common-law fraud requires proof of justifiable reliance, a less exacting standard than reasonable reliance).  Finally, Thomas sustained substantial losses as a direct result of the actions of K. Rice.

The Court notes that if the evidence had showed only that K. Rice failed to transfer title of the Mobile Home to Thomas consistent with her agreement to sell it to Thomas, it would not support a claim for fraud.  But the record is replete, as set out in the above discussion, with

evidence that the breach by K. Rice was intentional and premeditated. Of utmost importance to a finding of fraudulent intent is the credibility of witnesses, and the Court did not find K. Rice to be credible.

K. Rice contends that the "anti-reliance" language in paragraph 18 of the Sales Contract bars Thomas's fraud claim because it renders unjustifiable his reliance on K. Rice's misrepresentation that the Mobile Home was unencumbered by any lien and she could convey clear title. The non-reliance clause in paragraph 18 is just one factor in determining whether Thomas's reliance was justifiable, not the exclusive factor, and the existence of the lien was hidden from Thomas and not included in the Sales Contract. Moreover, the Court does not view the agreement by K. Rice in the Sales Contract not to incur any "additional" debt as sufficient notice of Green Tree's lien in the face of K. Rice's misrepresentation that there was no existing lien.

Thomas has suffered damages as a result of his justifiable reliance on K. Rice's misrepresentations. In the Pretrial Order, Thomas asks for consequential damages of $27,390.00, incidental damages of $10,627.00, and punitive damages of $50,000.00. In Mississippi, compensatory damages include damages that will replace the loss caused by the wrongful conduct, *Lee v. S. Home Sites Corp*., 429 F.2d 290, 293 (5th Cir. 1970), and the plaintiff has the burden of proving those damages with reasonable certainty. *Adams v. U.S. Homecrafters, Inc*., 744 So. 2d 736, 740 (Miss. 1999).

After K. Rice surrendered the Mobile Home, Green Tree obtained the 2014 Replevin Judgment against Thomas for the delinquency owed under the Retail Contract, including late charges, plus $2,000.00 in attorney's fees. Thomas has paid the delinquency and additional monthly payments totaling $6,529.04 toward satisfaction of Green Tree's lien in order to avoid

eviction.  He will have to satisfy Green Tree's lien in full in order to avoid eviction in the future.

The total amount of Green Tree's lien is not determinable from its proof of claim (POC 5-1),

which shows a balance owed of $8,920.40 *before* any of the lien payments by Thomas.  From the

evidence presented, the Court finds that Thomas has proved with reasonable certainty that he

sustained monetary damages of $8,529.04[20] plus the remaining amount necessary to satisfy fully

Green Tree's lien on the Mobile Home.

The Court also finds that Thomas is entitled to title to the Mobile Home upon satisfaction

of Green Tree's lien as another component of his damages.  At the end of the Trial, K. Rice

voluntarily agreed, upon full satisfaction of Green Tree's lien, to transfer title to the Mobile

Home to Thomas and indicated that Green Tree likewise would agree to transfer title to Thomas.

K. Rice has expressed no interest in retaining possession of the Mobile Home and, indeed, has

abandoned her interest in the Mobile Home in the Bankruptcy Case.  Her abandonment is not

surprising.  Thomas has already paid K. Rice $27,390.00 toward the purchase price of the

Mobile Home, exclusive of late charges.  The parties originally agreed to a purchase price of

$28,800.00 in January 2007 and a reduced purchase price of $27,890.00 in July 2012.  Thus,

Thomas has paid K. Rice almost the full purchase price for the Mobile Home and has paid more

than the full purchase price when his payments to Green Tree are included.  If Thomas continues

to pay Green Tree in order to avoid eviction and makes his final payment of the debt under the

Retail Contract, K. Rice, as a matter of equity, should relinquish title to the Mobile Home to

Thomas.   In that same vein, the Court finds that Green Tree should provide Thomas the

necessary information regarding the status of the indebtedness and then transfer title of the

Mobile Home to Thomas upon his satisfaction of its lien.  Moreover, the Court finds that K. Rice

---

[20] $8,529.04 = $6,529.04 (total payments made by Thomas to Green Tree) + $2,000.00 (attorney's fees awarded against Thomas in the 2014 Replevin Judgment).

should be required to take any necessary steps to facilitate the transfer of information regarding the Retail Contract and effectuate the transfer of title in the Mobile Home to Thomas upon satisfaction of Green Tree's lien.

With respect to punitive damages, Mississippi law allows for such damages where clear and convincing evidence shows that the defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65(1)(a). Punitive damages in Mississippi are not favored and are considered an extraordinary remedy. *Warren v. Derivaux*, 996 So. 2d 729, 738 (Miss. 2008). The primary purpose of punitive damages which in Mississippi is "to punish the wrongdoer and deter similar misconduct in the future." *Fred's Stores of Miss., Inc. v. M&H Drugs, Inc.*, 725 So. 2d 902, 918 (Miss. 1998). They should be awarded only where "the violation of a right or the actual damages sustained, import insult, fraud, or oppression and not merely injuries, but injuries inflicted in the spirit of wanton disregard for the rights of others." *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (Miss. 2006) (quoting another source).

At Trial, K. Rice testified that Thomas "came across as a pitiful gentleman"[21] in January 2007 and her disdain for Thomas was apparent to the Court throughout her testimony. Although this is a close case, the Court finds that an award of punitive damages is not warranted given the totality of the circumstances. *Cf. Burns v. Home Zone Sales & Lease (In re Burns)*, 503 B.R. 666, 680 (Bankr. S.D. Miss. 2013) (awarding $2,500.00 in punitive damages against creditor that arrogantly defied bankruptcy stay). The Court next turns to whether the total debt of $8,529.04 is dischargeable in the Bankruptcy Case.

---

[21] Test. of K. Rice at 2:02:30.

**C.     Section 523(a)**

A debtor is generally granted a discharge of all prepetition debts. *Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 674 (5th Cir. 2012). In certain circumstances, the Bankruptcy Code provides exceptions in which debts incurred by the debtor are non-dischargeable. 11 U.S.C. § 523 (listing all exceptions to a discharge otherwise allowed under §§ 727, 1141, 1128(a), and 1328(a)). The Fifth Circuit has held that "[e]xceptions to discharge should be construed in favor of debtors in accordance with the principle that provisions dealing with this subject are remedial in nature and are designed to give a fresh start to debtors unhampered by pre-existing financial burdens." *Fezler v. Davis (In re Davis)*, 194 F.3d 570, 573 (5th Cir. 1999).

To except the aforementioned debt of K. Rice from discharge under § 523(a), Thomas bears the burden of proving his factual allegations by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991). A fact is proven by a preponderance of the evidence if the Court finds it more likely than not that the fact is true. *EPA v. Sequa Corp. (In re Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 909-10 (5th Cir. 1993). Although exceptions to discharge are construed strictly against the creditor, and liberally in favor of the debtor, *Laughlin v. Nouveau Body & Tan, L.L.C. (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010), the Bankruptcy Code "limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'" *Grogan*, 498 U.S. at 286-87 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). Indeed, the provisions of § 523 specifically prohibit a "fresh start" to perpetrators of fraud. Here, Thomas alleges that the debts are non-dischargeable under § 523(a)(2)(A) and § 523(a)(6).

1.      **Section 523(a)(2)(A)**

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition . . . ." 11 U.S.C. § 523(a)(2)(A).   Section 523(a)(2)(A) encompasses three similar grounds for non-dischargeability, all of which apply to "debts obtained by frauds involving moral turpitude or intentional wrong." *First Nat'l Bank LaGrange v. Martin (In re Martin)*, 963 F.2d 809, 813 (5th Cir. 1992).   Although some courts have applied a uniform standard to all actions under § 523(a)(2)(A), the Fifth Circuit has recognized a distinction between the elements of proof required for false pretenses/representations and those required for actual fraud. *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 402-03 (5th Cir. 2001); *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291-92 (5th Cir. 1995).   The distinction "appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact." *Barvié v. Broadus (In re Broadus)*, 516 B.R. 378, 386 (Bankr. S.D. Miss. 2014) (citation omitted). Because Thomas's assertion that K. Rice falsely promised to convey the Mobile Home to him pertains to a future event, the Court will determine whether the debt is non-dischargeable under the "actual fraud" exception in § 523(a)(2)(A).

In order to prove non-dischargeability of a debt under § 523(a)(2)(A) for actual fraud, the evidence must show that either in the inducement or actual transaction: (1) the debtor made a representation; (2) at the time it was made, the debtor knew it was false; (3) it was made with the intent and purpose to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result of its reliance. *Gen.*

*Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005); *McCoun v. Rea (In re Rea)*, 245 B.R. 77, 85 (Bankr. N.D. Tex. 2000). The elements to prove actual fraud in Mississippi are substantially similar to the elements necessary to prove non-dischargeability under § 523(a)(2)(A). As mentioned previously, Thomas relied on K. Rice's fraudulent statements that there was no lien on the Mobile Home and she would convey title to him at the end of the lease term. This misrepresentation supports a non-dischargeability claim for actual fraud because: (1) she knew this representation was false at the time she made it; (2) she made the representation with the intent and purpose to deceive Thomas because she knew that Thomas would not agree to buy the Mobile Home if she did not make the representation; (3) Thomas actually and justifiably relied on the representation; and (4) Thomas sustained losses as a proximate result of his reliance on the representation.

The Court recognizes that K. Rice's breach of the Sales Contract is not tantamount to the commission of a fraud. But K. Rice's statement of her intentions to transfer title to the Mobile Home free of liens falls within the ambit of § 523(a)(2)(A) because she had no intention of performing as promised under the oral lease purchase agreement and the later Sales Contract. *Mercer*, 246 F.3d at 407-08 ("A representation of the maker's own intention to do . . . a particular thing is fraudulent if he does *not* have that intention.") (quoting another source); *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 484 (5th Cir. 1992); *In re Roeder*, 61 B.R. 179, 181-82 (Bankr. W.D. Ky. 1986); *see also Field v. Mans*, 516 U.S. 59, 70 (1995) (a buyer's reliance on a seller's representation the land is free of encumbrances "is justifiable, even if he could have 'walk[ed] across the street to the office of the register of deeds in the courthouse' and easily have learned of an unsatisfied mortgage.") (citation omitted). That she kept the lien a secret from Thomas for almost five (5) years is strong circumstantial evidence of her fraudulent

state of mind.  Moreover, that she twice tried to evict him and made no attempt to satisfy the lien

at the end of the lease term are also strong circumstantial evidence of fraud.  Accordingly, the

Court finds that Thomas has established the elements of a § 523(a)(2)(A) non-dischargeability

claim.

     **2.**        **Section 523(a)(6)**

     Thomas also seeks a determination that the debt is non-dischargeable under § 523(a)(6)

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor

to another entity or to the property of another entity."  The U.S. Supreme Court in *Kawaauhau v.*

*Geiger*, 523 U.S. 57 (1998), established guidelines for determining whether a debt results from a

willful and malicious injury and, therefore, is non-dischargeable.  In order to fall within the

exception of § 523(a)(6), the Supreme Court concluded that an injury must be deliberate or

intentional, rather than merely an injury that is the result of a deliberate or intentional act. *Id.* at

61; *see also Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc*., 783 F.2d 480, 486 (5th Cir.

1986). Following *Kawaauhau*, the Fifth Circuit in *Miller v. J.D. Abrams Inc. (In re Miller)*, 156

F.3d 598, 606 (5th Cir. 1998), condensed the terms "willful and malicious" into a single inquiry

of whether there is either (1) an objective substantial certainty of harm or (2) a subjective motive

to cause harm. *See Williams v. Int'l Bhd. of Elec. Workers (In re Williams)*, 337 F.3d 504, 509

(5th Cir. 2003) ("a debtor must commit an intentional or substantially certain injury in order to

be deprived of a discharge" under § 523(a)(6)); *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264,

273-74 (5th Cir. 2005).  "Because debtors generally deny that they had a subjective motive to

cause harm, most cases that hold debts to be non-dischargeable do so by determining whether

'[the debtor's] actions were at least substantially certain to result in injury."  *Berry v. Vollbracht*

*(In re Vollbracht)*, 276 F. App'x 360, 361-62 (5th Cir. 2007) (citation omitted) (unpublished).

The evidence presented to the Court shows that K. Rice agreed to sell the Mobile Home to Thomas when she knew Green Tree held a lien on the property and intentionally took steps to hide the existence of that lien from Thomas.  Her actions necessarily caused, or were substantially certain to cause, injury to Thomas at the end of the term of the lease.  Accordingly, the Court therefore finds that Thomas has met his burden of proving by a preponderance of the evidence that the debt arises from the willful and malicious injury inflicted by K. Rice pursuant to § 523(a)(6).

## Conclusion

For the above and foregoing reasons, the Court finds that Thomas is entitled to monetary damages of $8,529.04 plus the remaining amount necessary to satisfy fully Green Tree's lien on the Mobile Home.  In addition, Thomas is entitled to title to the Mobile Home upon satisfaction in full of Green Tree's lien.  The Court further finds that Thomas has established by a preponderance of the evidence each of the elements of § 523(a)(2) and § 523(a)(6) and, therefore, that the entire debt is non-dischargeable pursuant to § 523(a)(2) and § 523(a)(6).  A separate judgment consistent with this Opinion will be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##